**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **GILBERT LIMON** | § | |
| | § | |
| **V.** | § | **A-19-CV-021-LY** |
| | § | **(A-17-CR-215-LY)** |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Gilbert Limon, III's Amended Motion to Vacate Under 28 U.S.C. §
2255 and Memorandum of Law and Facts in Support (Dkt. Nos. 46 & 47), and the Government's
Response (Dkt. No. 44). The undersigned submits this Report and Recommendation pursuant to 28
U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District
Court for the Western District of Texas.

## I. PROCEDURAL BACKGROUND

Magistrate Judge Andrew W. Austin filed a Report and Recommendation (Dkt. No. 55) on
June 8, 2020, finding that Limon's Petition was barred by the AEDPA's statute of limitations. The
Report and Recommendation stated in relevant part:

> The parties do not dispute that Limon's final judgment was entered on December 21,
> 2017, and that he had 14 days from that date, or until January 4, 2018, to file a notice
> of appeal. As noted, the deadline to file a motion to vacate was one year from this
> date, or January 4, 2019. Limon's Motion was docketed on January 7, 2019, three
> days after the statute of limitations deadline.

*Id.* Limon objected to the Report and Recommendation asserting that the evidence considered by the
Court was not sufficient to determine that he did not utilize the prison legal system and therefore,

he should benefit from the mailbox rule, and his Petition would not be untimely. The district court overruled his objections and adopted the Recommendation. Judge Yeakel denied the Motion to Vacate, denied the Certificate of Appealability (Dkt. No. 57), and entered Final Judgment (Dkt. No. 58) on July 20, 2020. On September 10, 2020,  Limon filed a Notice of Appeal of Judge Yeakel's Order (Dkt. No. 61).

Finding that Limon's criminal judgment was not entered on the criminal docket until December 26, 2017, thereby rendering it timely, on March 29, 2021, the Fifth Circuit issued a mandate in the case granting Limon's Certificate of Appealability, vacating Judge Yeakel's Order and remanding the case for further proceedings. (Dkt. No. 62).

Those proceedings are now before this Court, where they were transferred after Judge Austin retired. Left to address are two issues: 1) whether Limon was denied the effective assistance of counsel when his counsel failed to withdraw his guilty plea; and 2) whether Limon  was denied effective assistance of counsel when his attorney failed to file a notice of appeal as directed by Limon.

The Court held an evidentiary hearing on July 13, 2021. At the hearing, the parties submitted exhibits into evidence, Dkt. No. 71, and the Court heard the testimony of Limon and his former retained counsel, Jon Evans, as well as the arguments of counsel for all parties. At the conclusion of the hearing, the Court announced that it found the testimony of Gilbert Limon, III, to be not credible relating to the issues before the Court. The Court's reasoning is outlined below.

## II. GENERAL BACKGROUND

On June 6, 2017, Movant Gilbert Limon, III, was indicted on three counts: possession with intent to distribute more than 50 grams of methamphetamine in violation of 21 U.S.C. § 841;

possession of a firearm during a drug trafficking felony in violation of 18 U.S.C. § 924; and felon in possession of firearm in violation of 18 U.S.C. § 922.

On September 29, 2017, Limon entered into a plea agreement, signed by both him and his attorney. Dkt. Nos. 18 and 44-1. That plea agreement provided that Limon pled guilty to a Superseding Information which included two counts—the drug count and the felon in possession of a firearm count. The count for possession of a firearm during a drug trafficking felony in violation of 18 U.S.C. § 924 was dropped. The plea agreement stated that the drug count carried a possible maximum sentence of twenty years, while the gun count carried a maximum sentence of ten years. *Id.* at 2. The guilty plea also contained a factual basis, which described how in April of 2017, Limon was arrested on an outstanding warrant. His vehicle was searched and officers recovered a small digital scale and baggies commonly used for packaging drugs. A search of Limon's apartment uncovered 196 grams of methamphetamine, plastic bags, drug tally sheets,  and a loaded .38 caliber revolver. *Id.* at 7.  Limon's initials are evident on every page of the plea agreement. He additionally testified that he initialed and signed every page of the plea agreement.

That guilty plea was entered on October 3, 2017, after an allocution before the undersigned. Dkt. No. 44-2. Limon testified at the plea hearing that he read and carefully went over the plea agreement with his lawyer before he signed it. Dkt. No. 44-2 at 8. He also testified that he understood that any estimate of a sentencing range given to him by his attorney was a guess and that such a guess is not binding upon a district judge, who was free to reach his own conclusion about Limon's sentence. *Id.* at 24. Limon also agreed at his guilty plea he was pleading guilty because he was in fact guilty of the charges against him, and that no one had promised him what his sentence would be in exchange for his guilty plea. *Id.* at 28. Lastly, he testified under oath that the facts

3

contained in the factual basis made part of his plea were accurate and described the crimes he committed. *Id.* at 29.

On December 21, 2017, the district court entered an Order of Judgment and Commitment in which Limon was sentenced to a prison term of 180 months as to count 1, and 120 months as to count 2, to run concurrent for a total term of 180 months; a 3 year term of supervised release as to counts 1 and 2 to run concurrent, for a total term of 3 years.  No fine or special assessment fee was imposed. An amended judgment was entered on December 26, 2017 that corrected an omission from the Court's December 21, 2017, oral recommendation that Limon serve his sentence at a specific facility within the BOP. No direct appeal was filed in this case.

### III. STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: 1) the sentence was imposed in violation of the Constitution or laws of the United States; 2) the district court was without jurisdiction to impose the sentence; 3) the sentence imposed was in excess of the maximum authorized by law; and 4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.  The nature of a collateral challenge under § 2255 is extremely limited:  "A defendant can challenge his conviction after is it presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).  A defendant's claim of ineffective

4

assistance of counsel gives rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996).

## IV. ANALYSIS

The Court reviews claims of ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). To warrant post-conviction relief, a movant must show his attorney's performance fell below an objective standard of reasonableness, and that he was prejudiced by that substandard performance. *Id.* at 687-692. To establish deficient performance, the movant must show that his counsel committed an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. A movant must offer more than "conclusory allegations" of his counsel's ineffective assistance. *See Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance are insufficient to raise a constitutional issue").

To demonstrate prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter*, 562 U.S. 86, 111 (2011). "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.' " *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693,

696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112.

## A.     Notice of Appeal

Limon first claims that counsel was ineffective because he directed his counsel, Jon Evans, to file a notice of appeal just prior to his sentencing hearing and Evans refused to do so, instead "giving him a paper" withdrawing from the case. "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). "[T]he failure to file a requested [notice of appeal] is per se ineffective assistance of counsel." *United States v. Tapp*, 491 F.3d 263, 265 (5th Cir. 2007). If a defendant "is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and [he] will be entitled to an out-of-time appeal, regardless of whether he is able to identify any arguable meritorious grounds for appeal . . . ." "*Id.* at 266. Even when a defendant waived his right to an appeal in a plea agreement, the presumption of prejudice recognized in *Flores-Ortega* still applies. *Garza v. Idaho*, 139 S. Ct. 738, 742 (2019).

The Court assesses the credibility of Limon and attorney Evans regarding the issue of whether Limon requested his attorney file a notice of appeal, and his attorney refused. *See Louis v. Blackburn*, 630 F.2d 1105, 1109 (5th Cir. 1980) (discussing the deference given to a judge who conducted an evidentiary hearing based on a habeas corpus claim and that judge's authority and discretion to make credibility findings based upon hearing and observing witness testimony). *See also Portillo-Guerrero v. United States*, 1:19-CV-82, 2020 WL 6922649, at *7–8 (S.D. Tex. Oct. 29, 2020), report and recommendation adopted, 1:19-CV-082, 2020 WL 6887780 (S.D. Tex. Nov. 24, 2020), and report and recommendation adopted, 1:19-CV-082, 2020 WL 7024857 (S.D. Tex.

6

Nov. 30, 2020), order amended and superseded, 1:19-CV-082, 2021 WL 183440 (S.D. Tex. Jan. 19, 2021), and report and recommendation adopted, 1:19-CV-082, 2021 WL 183440 (S.D. Tex. Jan. 19, 2021) (finding attorney's testimony that he was never asked to file an appeal credible and that Petitioner's testimony was not credible, thereby failing to carry Petitioner's burden by a preponderance of the evidence).

Both Limon, and his former attorney Evans testified under oath at the evidentiary hearing. Limon has been in and out of incarceration since the age of 14, with over a dozen criminal convictions, including one for deadly conduct, multiple aggravated assaults, thefts, and various drug offenses. Prior to the offense which led to his guilty plea in federal court, Limon's offenses resulted in incarceration in the Texas Department of Criminal Justice. Limon testified that he is a member of the prison gang, Tango Blast, and that he committed all the crimes he was convicted of in the past, and has never appealed any of his prior convictions.

Attorney Jon Evans has been an attorney for 28 years, and has been board certified in criminal law since 2006. He testified that he has handled over 100 federal criminal cases in the last fifteen years, and that he represented Limon in his federal criminal case. Evans testified that Limon requested that he pursue the course of action in which he would receive the least amount of time in prison.

With regard to his first claim, Limon testified that on the morning of his sentencing before the district court, he instructed Evans to file a notice of appeal no matter what sentence was given to him. Evans testified that this absolutely did not happen, and that Limon made no such request. Evans testified that in the past, he has had clients ask him to file a notice of appeal, even after pleading guilty and waiving that right, and he has always acted according to their wishes. Evans

7

stated under oath that had Limon asked him to file a notice of appeal, he would have done so. Evans attested that if requested to do so, he has a legal and ethical duty to follow his client's wishes, and file a notice of appeal. The Court finds that Evans' testimony on this issue is credible, while Limon's is not, for various reasons.

First, there is no evidence, other than his word, that Limon requested that Evans file a notice of appeal. Limon has presented no evidence that either he or his family members reached out to Evans before or after the sentencing hearing and asked him to file a notice of appeal. Evans testified that Limon never requested he file a notice of appeal, and the Court believes him. Moreover, Limon testified that he told Evans he wanted to file a notice of appeal at the same time that he told him he wanted to withdraw his guilty plea—just prior to his sentencing hearing. It seems unlikely that Evans would have ignored both requests, and contradictory that Limon would have proceeded to sentencing without bringing up these issues to Judge Yeakel, despite many opportunities to do so, and representations to the contrary, made under oath. When asked by Judge Yeakel, Limon explicitly stated that he intended to go forward with his plea, and that he reaffirmed the statements he made before the undersigned at his October 3, 2017, re-arraignment and guilty plea hearing, including his agreement to the factual basis of his plea, and his acknowledgment that he committed the crimes described in the factual basis. Dkt. No. 44-3 at 2. Additionally, Limon waived his right to appeal in his plea agreement and reaffirmed this at sentencing. Dkt. No. 44-1 at 3; Dkt. No. 44-1 at 20. Limon's actions and statements to the district court at sentencing do not reflect any uncertainty with his decision to plead guilty, wish to appeal his sentence, or issues with his attorney's performance.

Second, the timing of the alleged request to file a notice of appeal just prior to sentencing is suspicious. There is no reason for an individual who has pled guilty to request his attorney to appeal

a sentence he has not even received. For all Limon knew, he would receive a sentence at the lowest end of the United States Sentencing Guidelines range. As it was, he received a mid-level[1] sentence with a reduction for acceptance of responsibility, despite a very high criminal history score, and his attorney successfully argued against the Government's motion for upward departure from the Guidelines. Limon testified at his habeas hearing that he "did not know his rights had been violated" until well after his sentence. This statement is inconsistent with any alleged direction to his counsel to file a notice of appeal prior to sentencing.

Additionally, Limon's testimony regarding his reasoning for his alleged desire to appeal is not credible. Limon argues he wanted to appeal because he had been "lied to" and "swindled" by his attorney. Limon testified that he only pled guilty pursuant to his attorney's alleged representations that the plea was the "best thing for him" because of his substantial criminal history and that the Government would not test the drugs found in his apartment if he pled, and therefore he could avoid the higher Guidelines range if the substance was determined to be "ice" rather than regular methamphetamine. This testimony regarding the Government not testing for "ice" does not ring true, and there no evidence Limon was "lied to" or "swindled" by Evans by promising a particular outcome if he pled. In fact, at his guilty plea, Limon testified that he had been no promises about the length of his sentence in exchange for his guilty plea. Dkt. No. 44-2 at 28.

Evans testified that he never represented to Limon that the drugs found at his apartment would not be tested, but prior to the submission of the PSR, explained the different outcomes if the drugs were determined to be "ice" versus not. Evans also testified that in his experience, the vast majority of drug cases in Austin, Texas, involved the "ice" version of methamphetamine, and he had

---

[1]Limon was subject to a statutory maximum sentence of thirty years. His Guidelines range was from 168 to 210 months. Dkt. No 26 at 20.

no control over whether the Government decided to test the drugs, which he represented to Limon. The PSR containing the "ice" determination was produced on November 9, 2017, more than forty days prior to Limon's sentencing hearing, on December 21, 2017. Dkt. No. 26. Evans testified that both he and his colleague Jesus Salinas went over the PSR with Limon prior to his sentencing. The Court finds Evans' testimony on this issue is credible.

Evans' testimony is further bolstered by the record. The transcript shows that Limon was certainly aware of the fact that the drugs found in his apartment had been tested and found to be "ice" in advance of sentencing, as Limon averred to the district court at sentencing that he had reviewed the PSR, Dkt. No. 26, with his lawyer. Dkt, No. 44-3 at 3. The PSR clearly reflected the "ice" findings' effect on his Guidelines recommendation from Probation to the district court. *Id.*

> THE COURT: Then the Court accepts and adopts the report and recommendation of the magistrate judge, accepts your plea of guilty, and finds you guilty of the offense to which you have pleaded guilty. Have you had sufficient time to review with your lawyer the presentence investigation report prepared by the Probation Department in this case?
>
> MR. EVANS: Yes, Your Honor.

Dkt. No. 44-3.

Evans filed objections to the PSR, and objected to Limon's offense level at sentencing on the basis of the harsher sentence for "ice" methamphetamine as opposed to other forms of the substance. Dkt. No. 30-1. He additionally made these arguments at Limon's sentencing hearing. Limon's testimony that he asked Evans to file a notice of appeal on the dubious basis that Evans promised him the Government would not test the drugs found in his apartment if he pled guilty, is simply not credible. While the Court understands that if asked to file a a notice of appeal, an attorney must do so, even if there is no good basis for the appeal, in this case Limon's statements about the reasons

for of his alleged request to file a notice of appeal ring hollow, impacting the Court's assessment of his credibility.

Third, Limon's testimony in general is not credible. Limon made several representations to the Court, under oath, which belie his claims and testimony here. Limon asserts now that he is innocent of the crimes to which he pled guilty. However, he testified before the Magistrate Court at the time of his guilty plea that the factual basis of his plea was correct. Dkt. No. 44-2 at 29. Limon affirmed these affirmations to the district court at sentencing. 44-3 at 3. The factual basis stated that the guns and drugs found in his apartment belonged to him. Dkt. No. 44-1 at 6-7.  He testified at his guilty plea before the undersigned that  no representations had been made to him about the outcome of his case, and that his plea was not conditioned on a promise of a particular sentence. Dkt. No. 44-2. At his sentencing hearing before Judge Yeakel, Limon stated that he had "messed up," and stated that he wanted to go forward with his plea. Dkt. No. 44-3 at 5. Limon testified in the current hearing before this Court that he lied under oath when he pled guilty.

Limon also testified that he was shown no paperwork in his case and that his lawyer did not allow him to see the PSR. However, the Government offered into evidence the Plea Agreement signed by Limon on every page, and Limon acknowledged on the witness stand that he reads English and identified his signature and initials on every page of the Plea Agreement. Dkt. No. 44-1. Moreover, as evidenced above, Limon testified in open court that he had gone over the Plea Agreement and PSR with his attorney prior[2] to sentencing. Limon lied to the Court when he claimed that he was shown no paperwork or the PSR in his case.

---

[2] Limon testified that his Evans palmed him off on his "assistant" Jesus Salinas, who also visited him in jail. Evans testified that Salinas was not his assistant, but a criminal defense attorney who is now employed by the Federal Public Defender's office in the Austin Division of the Western District of Texas. Limon does not assert that Salinas' performance was deficient.

Lastly, Limon acknowledged while on the stand before this Court that prior to sentencing he wrote a letter to Probation expressing that he was "embarrassed and ashamed" and taking full responsibility for the drugs and gun found in his apartment. Dkt. No. 26 at 6. Limon was afforded a recommended reduction in his sentence for his acceptance of responsibility expressed in this letter. *Id.* He now states that this letter was a lie, and that his attorney wrote it for him. Evans testified that he in fact helped Limon draft the letter, that they went over its contents which Limon agreed were true, and Limon signed the letter. Asserting on the stand that he lied in the past does not bolster Limon's credibility as a witness.

In sum, Limon testified several times at the evidentiary held by this Court that he is more than willing to lie when he believes it is to his benefit. Limon and his claim that he requested Evans to file a notice of appeal are simply not credible, while the Court finds Evans' testimony is credible. The Court finds that Limon's claim of ineffective assistance for his counsel's failure to file a notice of appeal should be denied.

## B.     Failure to Withdraw Guilty Plea

Limon also complains that his counsel was ineffective when he failed to withdraw Limon's guilty plea when requested by Limon to do so. Limon asserts this occurred after the Magistrate Judge issued his Report and Recommendation recommend that the district court accept the plea but just prior to the district court's acceptance of the plea. Rule 11(d)(1) provides that "[a] defendant may withdraw a plea of guilty or nolo contendere . . . before the court accepts the plea, for any reason or no reason." FED. R. CRIM. P. 11(d)(1). "Rule 11(d)(1) is an absolute rule: a defendant has an absolute right to withdraw his or her guilty plea before the court accepts it." *United States v. Arami*, 536 F.3d 479, 483 (5th Cir. 2008).

Limon asserts that his counsel, Evans, informed him that he could not withdraw his plea. Evans testified that Limon never asked him to withdraw his guilty plea "period." The Court finds that Limon did not carry his burden at the evidentiary hearing as to this issue and his testimony is not credible, while Evans' testimony is.

The evidence does not support that Limon requested his counsel withdraw his plea just prior to sentencing. When asked by Judge Yeakel at sentencing, Limon stated he wanted to continue with his plea. At the sentencing hearing in front of Judge Yeakel, Limon made the following representations in open court:

> THE COURT: Mr. Limon, you have pleaded guilty to two counts of a Superseding Information, Count 1 charging you with conspiracy to possess with intent to distribute methamphetamine, a Class C felony, and Count 2, felon in possession of a firearm, also a Class C felony; is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You pleaded guilty before United States Magistrate Judge Mark Lane on October 3rd, 2017. Do you remember that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Is it your intention to continue with your plea of guilty at this time?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Is there a plea agreement in this case?
>
> MR. EVANS: There is, Your Honor.
>
> THE COURT: Mr. Limon, do you reaffirm the statements that you've made in your plea agreement as well as the statements that were made in the factual basis that was presented to Judge Lane at the time you made your plea of guilty?
>
> THE DEFENDANT: Yes, Your Honor.

13

THE  COURT: Then the Court accepts and adopts the report and recommendation of  the magistrate  judge,  accepts  your plea of guilty, and finds you guilty of the offense to which you have pleaded  guilty.

Dkt. No. 44-3.

In light of his avowal in open court that he wished to plead guilty, Limon's claim that he informed his attorney he wished to withdraw his guilty plea prior to sentencing is not credible. As to his claim that Evans told him he could not withdraw his plea, the district court gave Limon the opportunity to do so before it accepted his plea, and he did not. The Court's finding on this issue is further supported by the reasoning stated above regarding the Court's conclusion that Limon's testimony is generally not credible, and the Court's conclusion that Limon did not ask his counsel to file a notice of appeal. The Court finds that: Limon has failed to carry his burden to establish that his counsel failed to withdraw his guilty plea when directed to do so; his counsel's performance was effective; and Limon's habeas petition  should be denied.

## V. RECOMMENDATION

In accordance with the preceding, the undersigned **RECOMMENDS** that the district court **DENY** the Gilbert Limon, III's Amended Motion to Vacate Under 28 U.S.C. § 2255 and Memorandum of Law and Facts in Support (Dkt. Nos. 46 & 47).

## VI. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations within fourteen days after the party is served with a copy of

the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

## VII. CERTIFICATE OF APPEALABITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, effective as amended to February 1, 2010, the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability ("COA") may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching

the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, a certificate of appealability shall not be issued.

**SIGNED** on July 20, 2021.

MARK  LANE
UNITED STATES MAGISTRATE JUDGE